# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : Criminal No.: 17-213 (CRC)[1] |
| | : |
| **Mustafa Muhammad Muftah Al-Imam,** | : |
| | : |
| **Defendant.** | : |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, pursuant to 18 U.S.C. §§ 3142(f)(1)(A), 3142(f)(1)(B), 3142(f)(2)(A) and 3142(f)(2)(B), seeks an Order detaining the defendant pending trial.  The defendant, Mustafa Muhammad Muftah Al-Imam, a Libyan national, has been charged by federal indictment for his participation in the September 11, 2012, terrorist attack on United States facilities in Benghazi, Libya ("Attack"), which resulted in the deaths of Americans.  The defendant was captured in Libya on or about October 29, 2017, during an operation conducted by U.S. personnel.  The defendant was transported to the United States to be presented in U.S. District Court for the District of Columbia to stand trial on charges arising from his involvement in the Attack.  The defendant has no ties to the United States and poses a serious danger to others.

There is no condition or combination of conditions that will reasonably assure the defendant's appearance in Court and assure the safety of any person and the community.  Indeed, the law presumes – and the defendant cannot rebut – that he should be detained based on the nature of the pending charge, and an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the inescapable conclusion that detention is appropriate.

---

[1] Prior to indictment, this matter bore case number 15-MJ-318 (AK).

A.      **PROCEDURAL HISTORY**

On May 19, 2015, the defendant was charged in a sealed criminal complaint with the following offenses: (1) Killing a Person in the Course of an Attack on a Federal Facility Involving the Use of a Firearm and Dangerous Weapon and Attempting and Conspiring to Do the Same, in violation of 18 U.S.C. §§ 930(c) and 2; (2) Providing and Attempting and Conspiring to Provide Material Support to Terrorists Resulting in Death, in violation of 18 U.S.C. §§ 2339A and 2; and (3) Discharging, Brandishing, Using, Carrying and Possessing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2.   At that time, a warrant was issued for the defendant's arrest.   The defendant was captured on or about October 29, 2017, while he was overseas.   On the government's motion, the complaint was subsequently unsealed.

On November 8, 2017, a federal grand jury in this district returned a one-count Indictment charging the defendant with Conspiracy to Provide Material Support and Resources to Terrorists Resulting in Death, in violation of 18 U.S.C. § 2339A.   Specifically, the Indictment charges the defendant with conspiring to provide material support and resources to terrorists, knowing and intending that the support and resources were to be used in preparation for and in carrying out a violation of 18 U.S.C. § 930(c) (killing a person in the course of an attack on a federal facility involving the use of a firearm and a dangerous weapon) and a violation of 18 U.S.C. § 844(f) (maliciously damaging and destroying U.S. property by means of fire and an explosive).   The charged offense, which carries a maximum penalty of life in prison, see 18 U.S.C. § 2339A, is a crime of violence, as defined in 18 U.S.C. § 3156(a)(4).   See United States v. Goba, 220 F.Supp.2d 182, 187 (W.D.N.Y. 2003) (conspiracy to provide material support to foreign terrorist organization constitutes a "crime of violence").   The charged offense is also listed as a Federal

crime of terrorism in 18 U.S.C. § 2332b(g)(5)(B). An immigration detainer has been issued for the defendant by the Department of Homeland Security.

The defendant's initial appearance was held on November 3, 2017, at which time the United States moved for the defendant's pretrial detention, pursuant to 18 U.S.C. § 3142(f). Pretrial detention is warranted in this case because it involves: (1) a crime of violence and offense listed in 18 U.S.C. § 2332b(g)(5)(B) (see 18 U.S.C. § 3142(f)(1)(A)); (2) an offense for which the maximum sentence is life imprisonment or death (see 18 U.S.C. § 3142(f)(1)(B)); (3) a serious risk that the defendant will flee (see 18 U.S.C. § 3142(f)(2)(A)); and (4) a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror (see 18 U.S.C. § 3142(f)(2)(B)). The Court scheduled a detention hearing for November 8, 2017.

**B.     APPLICABLE LAW**

The Bail Reform Act of 1984, 18 U.S.C. § 3141, et seq., provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). See also United States v. Smith, 79 F.3d 1208, 1209 (D.C. Cir. 1996) (a judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence); United States v. Henry, 935 F. Supp. 24, 25 (D.D.C. 1996) ("If a defendant poses a danger to society, the Court has sufficient basis upon which to order pretrial detention.") (citation omitted). The Bail Reform Act also provides for pretrial detention where a judicial officer finds by a preponderance of the evidence that there are no conditions of release that will reasonably assure the defendant's appearance. 18 U.S.C. § 3142(e). See also United States

v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996) (when "risk of flight" is the basis for detention, the government must satisfy a preponderance of the evidence standard); United States v. Anderson, 382 F. Supp. 2d 13, 14 (D.D.C. 2005) (Bail Reform Act "provides for pretrial detention if the government establishes by a preponderance of the evidence that the defendant is likely to flee before trial if released and that no condition or combination of conditions will reasonably assure the appearance of the defendant as required") (citations omitted).

There is a rebuttable presumption of detention if there is probable cause to believe that the defendant committed "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. §§ 3142(e)(3)(C). That rebuttable presumption applies here because the offense charged in the Indictment is listed as a Federal crime of terrorism in 18 U.S.C. § 2332b(g)(5)(B), and carries a maximum sentence of life in prison. The Indictment establishes the probable cause to believe that the defendant committed this offense. Once a rebuttable presumption is created, it imposes a burden of production on the defendant to offer contrary credible evidence. See United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985). However, "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g)." United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008), *quoting* United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986). See also United States v. Ali, 793 F. Supp.2d 386, 387-88 (D.D.C. 2011); United States v. Bess, 678 F.Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.").

Section 3142(g) lists four factors that guide a court's detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).  At a detention hearing, the government may present evidence by way of a proffer.  Smith, 79 F.3d at 1209-10.  For the reasons that follow, the defendant cannot overcome the rebuttable presumption in favor of his pretrial detention.

**C.    FACTORS SUPPORTING DETENTION**

An analysis of the facts underlying this prosecution demonstrates that detention is appropriate.[2]

**(1)    Nature and Circumstances of the Offense**

The defendant is charged with a grave offense, Conspiracy to Provide Material Support and Resources to Terrorists Resulting in Death.  As discussed above, this case involves a crime of violence, as defined by 18 U.S.C. § 3156(a)(4) and a Federal crime of terrorism, as listed in 18 U.S.C. § 2332b(g)(5)(B).  See 18 U.S.C. § 3142(g)(1).  Reflecting the seriousness of this offense, the charged offense carries a maximum sentence of life in prison.  See United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2012) (prospect of life in prison creates a strong motive to flee); United States v. Geerts, 629 F.Supp. 830 (E.D.Pa. 1985) (defendant facing prospect of fifty years of

---

[2] The facts proffered in this memorandum are based on a combination of evidence including, for example, witness interviews, forensic evidence, and voluntary statements made by the defendant after his capture.  The government is not attempting in this memorandum to proffer all facts known to it in this case or all evidence it possesses against the defendant.  The government is merely providing facts that it believes will be more than sufficient to establish the need for the defendant's detention.

5

incarceration was a risk of fight); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) (a consideration of the nature and circumstances of the offense also requires the court to weigh the possible penalty the defendant may face upon conviction).

As discussed further below, the defendant is an approximately 45-year-old Libyan national who conspired to participate and participated in the Attack that ultimately resulted in the death of four Americans and the destruction of U.S. property.

On September 11, 2012, at approximately 9:45 p.m., a large group of armed men assembled outside the United States Special Mission in Benghazi ("Mission") and then aggressively breached the Mission gate. Several Benghazi-based extremist militia members have been identified among this group. The initial attackers were armed with AK-47-type rifles, handguns, and rocket-propelled grenade launchers. After the initial breach, the attackers stole a Mission vehicle, forcibly entered and damaged Mission buildings, and stole Mission property. During this initial attack, buildings within the Mission were set on fire. The fires that were set during the attack ultimately led to the deaths of Ambassador J. Christopher Stevens and Information Management Officer ("IMO") Sean Patrick Smith. The remaining DOS personnel were able to escape to a nearby U.S. facility, known as the Annex. It also soon came under attack, which continued throughout the early morning hours of September 12, 2012, culminating in a precision mortar attack that resulted in the deaths of Security Officers Tyrone Snowden Woods and Glen Anthony Doherty.

The expansive investigation, led by the Federal Bureau of Investigation ("FBI"), began immediately following the Attack and involved interviewing numerous witnesses regarding the Attack and the surrounding circumstances, recovering and exploiting materials from the crime scenes, and obtaining and analyzing a variety of other evidence. Through this investigation, the

witness statements, corroborated by other evidence, establish the defendant's involvement in the Attack.

That evidence notably includes information closely connecting the defendant to a known commander of an extremist brigade who was actively involved in orchestrating and participating in the Attack. For example, phone records demonstrate that, prior to and during the course of the Attack, the defendant was in close communication with Ahmed Abu Khatallah ("KHATALLAH"), the commander of Obaidah Ibn Al Jarrah (UBJ), an extremist brigade that was closely associated with Ansar Al Sharia ("AAS"). AAS is an Islamic extremist militia in Libya that holds anti-Western views and advocates the establishment of Sharia law in Libya. The United States Department of State ("DOS") designated AAS in Benghazi a Foreign Terrorist Organization on January 10, 2014. The DOS noted in its designation that AAS in Benghazi has been involved in terrorist attacks against civilian targets, frequent assassinations, and attempted assassinations of security officials and political actors in eastern Libya as well as the Attack. KHATALLAH, who was a senior leader of AAS in Benghazi, was also designated by the U.S. government as a Specially Designated Global Terrorist. KHATALLAH was captured on June 15, 2014, after being charged for his involvement in the Attack by a sealed criminal complaint, and is now standing trial on an 18-count superseding indictment, based on his involvement in the Attack. Of particular significance, video surveillance evidence also establishes the defendant's presence at the Mission on the night of the Attack along with KHATALLAH and demonstrates their involvement at that time in exploiting sensitive material from the scene.

Moreover, the defendant's voluntary post-capture statements to the FBI further demonstrate his involvement in the Attack on the American facilities. Following the presentation of his *Miranda* rights in his native language of Arabic, the defendant waived those rights and explained,

among other notable information: 1) the defendant's close connection with KHATALLAH and his extremist militia; 2) the defendant's awareness of KHATALLAH's role as a commander and leader of UBJ and awareness that KHATALLAH was seen as a commander and leader by many AAS militia fighters; 3) the defendant's awareness of KHATALLAH's specific animus towards the American presence in Benghazi; 4) the defendant's efforts to accompany KHATALLAH to the Mission on September 11, 2012 with at least one armed associate, after spending time with KHATALLAH earlier that day at a camp shared by UBJ and AAS; 5) the defendant's participation in the exploitation of the Mission along with Khatallah, which included the defendant stealing specific Mission property at KHATALLH's direction and the defendant's additional efforts to steal other materials that, the investigation has revealed, contained location information capable facilitating the precision mortar attack against the Annex; 6) the defendant's assaultive conduct towards an individual attempting to memorialize the presence of UBJ and AAS personnel at the Mission; and 7) the defendant returning to an AAS camp, where KHATALLAH also returned, following his exploitive and assaultive conduct at the Mission.

Given the defendant's demonstrated commitment to causing death and destruction to American personnel and property in collaboration with extremist militants, the defendant could continue to communicate regarding additional deadly attacks and encourage others to carry out those plans, if not detained.  The defendant has established his interest in developing close contacts with members of extremist groups in Libya, including his close associates who participated in the Attack, and those individuals could carrying out additional plots to attack American and Western interests.  Without the defendant's detention, he could communicate and further conspire with extremist individuals.

In short, there is no condition or combination of conditions that will reasonably assure the defendant's appearance in Court and assure the safety of any person and the community.  This inescapable conclusion is based on the defendant's demonstrated interest and actions to harm American personnel and property, which have already led to the deaths of American citizens and the destruction of American property in Benghazi.  This conclusion is also based on the defendant's demonstrated interest in associating himself with members of extremist groups in Libya, similarly bent on harming American personnel and property.  Given the defendant's proclivity for violence as well as his ability to readily communicate with other similar-minded individuals, his detention is the only means available to neutralize that threat.  See United States v. Medina Coronado, 588 F. Supp. 2d 3, 4 (D.D.C. 2008) (choosing to detain defendant due to nature of alleged crime, the history and characteristics of the defendant, and his extensive international ties, where defendant was charged with conspiracy to distribute cocaine and allegedly paid "taxes" to DOS foreign terrorist organization).  Moreover, given the defendant's lack of ties to the United States and the serious charge facing him, the defendant has strong incentives to flee the jurisdiction.  See Townsend, 897 F.2d at 996 (affirming pre-trial detention on the basis of flight risk where the defendants faced "severe penalties," "reside in foreign countries," and have "no significant ties to the United States").  It is therefore necessary for the safety of the public and to assure his appearance as required that the defendant be detained.

**(2)     Weight of the Evidence Against the Defendant**

As summarized above, the evidence against the defendant is strong.  There are numerous witnesses who support the account described above, as well as various other evidence, including video surveillance demonstrating the defendant's efforts to exploit sensitive material from the Mission and phone records closely connecting the defendant to KHATALLAH on the day of the

Attack.  In addition as discussed above, the defendant gave voluntary post-capture statements corroborating key facts.  As a result, the witness statements, corroborated by other evidence, establish the defendant's involvement in the Attack.

### (3) History and Characteristics of the Defendant

The defendant is a resident and citizen of Libya, which has no extradition treaty with the United States.  His entire family and all known associates remain in Libya or outside the United States.  He has no ties to the United States.  See United States v. Khanu, 675 F.Supp.2d 69 (D.C. Cir. 2009) (finding "citizenship in Sierra Leone, [and defendant's] trip there prior to indictment" were facts favoring detention); United States v. Stanford, 722 F.Supp.2d 803 (S.D. Texas 2010) ("access to international network of contacts," and "primary residence in Antigua" demonstrated risk of flight); United States v. Vergara, 612 F. Supp.2d 36, 38 (D.D.C. 2009) (ordering that defendant accused of providing advanced communications networks for a terrorist organization is a flight risk and must remain detained given that she was not a United States citizen, had extensive foreign ties, and had communications expertise); United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993) ("travels abroad" and ties to foreign communities created incentive to flee); Goba, 240 F. Supp. 2d at 250-51 (finding that defendants who resided in the United States still posed a risk of flight given demonstrated ability to sustain themselves abroad for an extended period of time).

As discussed above, the defendant has demonstrated his close association with extremist militias, including his participation in the Attack for which he is charged.  He is present in the United States solely to stand trial on the Indictment.  He was captured by U.S. personnel on or about October 29, 2017, and subsequently transported to the United States.  In addition to the defendant posing a significant danger to others if not detained, the defendant also would have every incentive to flee the United States were he ever released.  The defendant has no ties to the

United States and has been transported to the United States solely to face trial for a terrorism offense.[3]

### (4) Nature and Seriousness of the Danger Posed by the Defendant's Release

The defendant poses a substantial danger, as detailed above, to United States nationals and the community in general. The defendant's actions to harm American personnel and property have already led to the deaths of American citizens and the destruction of American property. Moreover, the defendant has demonstrated his interest in relationships with members of extremist groups in Libya, who are bent on harming American personnel and property. Given the defendant's proclivity for violence as well as his ability to readily communicate with other similar-minded individuals, his detention is the only means available to neutralize that threat.

### D. CONCLUSION

The Indictment and the additional factual proffer set forth above fully support the pretrial detention of the defendant under 18 U.S.C. § 3142. The defendant cannot overcome the rebuttable presumption in favor of pretrial detention. There is simply no condition or combination of conditions that will reasonably assure his appearance or the safety of the community.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

---

[3] The government anticipates seeking a superseding indictment, which will include additional charges against the defendant.

By:\_\_\_\_\_/s/_____
Michael C. DiLorenzo
MD Bar No. 931214 0189
Julieanne Himelstein
D.C. Bar No. 417136
Opher Shweiki
D.C. Bar No. 458776
John Crabb Jr.
N.Y. Bar No. 2367670
Assistant United States Attorneys
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7809
Michael.Dilorenzo@usdoj.gov